**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**CECIL BRADLEY MATHEWS,**

      **Plaintiff,**

**vs.**                                                                    **Case No. 4:14cv289-WS/CAS**

**JULIE JONES,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, initiated this case on June 12, 2014.

ECF No. 1.  He was granted leave to proceed with in forma pauperis

status, ECF No. 5, and permitted to file a fourth amended complaint.  ECF

Nos. 45, 47-48.  Defendant Jones filed an amended answer, ECF No. 51,

to Plaintiff's fourth amended complaint, ECF No. 48, and the parties

conducted discovery.  ECF No. 58.

Defendant filed a motion for summary judgment, ECF No. 65,

supported by several exhibits.  Plaintiff filed an amended motion for

summary judgment, ECF No. 66, also supported by exhibits.  The parties

were advised of their obligations to respond to the opposing party's motion

for summary judgment, ECF No. 67, pursuant to Local Rule 56.1 and Rule

256.   Plaintiff has filed a reply, ECF No. 68, and memorandum of law, ECF

No. 69.  Defendant Jones also filed a response.  ECF No. 72.  The motions

are ready for review.

## Allegations of the Complaint

Plaintiff challenges a prison policy as violating his equal protection

rights.   ECF No. 48 at 7.   Plaintiff is a Native American prisoner and

challenges Procedure 503.001-8(b) which prohibits having "beaded

headbands."  *Id.*  Plaintiff contends that because prisoners of other

religious faiths are allowed various kinds of beads, there is no legal or

legitimate justification for the unequal treatment.  *Id.*  Plaintiff seeks

declaratory judgment, reimbursement of the filing fee for this litigation, and

an award of nominal damages.  *Id.* at 9.

## Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[1] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of

evidence" is not enough to refer the matter to a jury).  The Court must

decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[2] but "only if there is a

'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**Relevant Rule 56(e) Evidence**

---

[2]  Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

The Department of Corrections' Office of Chaplaincy Services
"produces and distributes a Religion Technical Guide ("RTG")," a document
that "addresses common institutional religious concerns."  ECF No. 65, Ex.
A at ¶2 (Exhibit A is the Alex Taylor Declaration, ECF No. 65-1).  "The RTG
is developed with input from the Department's security experts and is only
distributed after review by the Security Operations Division of the
Department."  *Id.*

"The RTG provides that prayer beads used by inmates in religious
observance must be one of the following colors: clear or solid white, black
or natural color (wood or seed)."  *Id.* at ¶3.  "The color restriction is an
attempt to provide a least restrictive accommodation for inmates who utilize
beads in their religious observance while addressing the security concerns
of the Department."  *Id.*  "The restriction applies to all inmates, regardless
of religion."  *Id.*

Pursuant to Procedure 503.001, Guidelines for Native American
Religious Observances, Native American inmates are permitted to "wear
headbands at all times, but inmates may not have beaded headbands."
ECF No. 65, Ex. A at ¶4.  That decision "was made by security, not

chaplaincy, and is based on issues with the beads themselves, rather than what religion they are being used by." *Id.*

Defendant submitted the Declaration of Alex Taylor, the Chaplaincy Services Administrator, which states that the RTG permits prayer beads. ECF No. 65, Ex. A at ¶3. Catholic inmates may utilize Rosary beads, Muslim inmates may carry Dhikr beads, Buddhist and Hindu inmates may use Mala beads, and Santerian inmates may use Orisha beads. *Id.* The "prayer beads" which are permitted for other religions are larger than Native American beads "and are supposed to be the same color (white, black or natural wood/seed color)." *Id.* at ¶4. "Native American beads are small[3] and colorful," and "could be used to indicate gang or other group affiliations." *Id.*

The Taylor Declaration also explains that "prayer beads used by some other religions have a long history of spiritual discipline applications." ECF No. 65, Ex. A at ¶5. That is "not equally true of the Native American beads." *Id.* "The headbands are more for tribal identification and for their beauty." *Id.* While beadwork may "sometimes" include symbols "to

---

[3] Prayer beads "are larger and generally 1/4 to 1/2 inch in diameter." ECF No. 65, Ex. B at ¶5.

indicate a certain belief or religion, the beads also often point to a person's standing in the community."  *Id.*; *see also* ECF No. 65, Ex. B at ¶4.

Native American inmates "may wear headbands made of fabric or animal skin or any color, and may paint tribal or traditional designs on his or her headband as part of a supervised activity."  ECF No. 65, Ex. B, ¶3 (Exhibit B is the Carl Wesley Kirkland, Jr., Declaration,[4] ECF No. 65-2). "Decorated headbands must also be described on the inmate's DC6-224, Inmate Personal Property List, which lists an inmate's property."  *Id.* "Specific colors or symbols that associate or could associate the inmate with a Security Threat Group [STG] are prohibited."  *Id.*  "Unless the inmate has been found to be involved in STG activity, he or she will be allowed to exchange his or her current headband for one of a different color."  *Id.*

The Kirkland Declaration asserts that beaded headbands "pose a security risk to the institution."  ECF No. 65, Ex. B, ¶4.  The small, colorful beads "can be used to indicate gang affiliations."  *Id.*  They may also designate status or standing within a group.  *Id.*

That Declaration explains that "reactions to those who are 'different' . . . are frequently dramatically exaggerated in the prison environment

---

[4] Mr. Kirkland is the Bureau Chief of Security Operations.  ECF No. 65, Ex. B.

leading to violence and serious disruption.  *Id.* at ¶5.  Additionally, many

prisoners have a "strong need . . . to belong to a group for protection, or to

organize as more effective predators."  *Id.*  "To combat [those] concerns,

the Department maintains a consistent approach to inmate appears in

order to reduce visible affiliations with gangs and other" Security Threat

Groups.  *Id.*  Thus, inmates must "wear the same uniform, adhere to a strict

grooming code, and are prohibited from having desirable personal property

or from obtaining a position of leadership over other inmates."  *Id.*  "Inmates

wearing special items stand out and call attention to themselves, creating a

separate group and identity within the prison."  *Id.*  "Special allowances in

terms of dress or hair length, for example, can facilitate development and

growth of these elements."  *Id.*  The Kirkland Declaration explains that

"group and/or gang identification can be very subtle, such as the presence

of a few colored beads, leaving a certain shoelace untied, or rolling up one

pant leg."  *Id.*

     Both Declarations state that Native American beads have a history of

being used as money in the past, and inmates are not permitted to possess

money.  ECF No. 65, Ex. A, ¶5; Ex. B at ¶6.  Inmates cannot have money

"because it allows them to trade money for favors, goods, etc., which could

jeopardize the prison staff's safety and the security of the institution as a whole."  ECF No. 65, Ex. B, ¶6.

Plaintiff has submitted Defendant's response to his interrogatories, ECF No. 66 at 10-12, which states that Native American inmates may wear headbands of "any color" and "may paint tribal or traditional designs."  ECF No. 66 at 1.  Plaintiff has submitted evidence showing that "Buddhism, Hinduism, Krishna, Thelema, have no designation of color" for their beads, which are permissible.  ECF No. 66 at 2; ECF No. 66, Ex. B.

Followers of Buddhism may have "Mala prayer beads, usually made of sandalwood (but they can be made of other materials) with 108 beads that are wrapped around the wrist approximately two times."  ECF No. 66, Ex. B-1 (ECF No. 66 at 14).  The beads "are stored in a small solid colored bag . . . ."  *Id.*  Followers of Thelema may have prayer beads, and there is "no specific number of beads."  ECF No. 66, Ex B-6.  Followers of Hinduism may have "Japa-Mala Beads" which are not "worn, but should be carried in a pocket."  ECF No. 66, Ex. B-2.  Krishna Consciousness followers also may have Japa-Mala beads which may be stored in a bag. ECF No. 66, Ex. B-3.  A supporting affidavit submitted by inmate Gerald Niles states that Japa-Mala beads are on a string or loop, consisting of

"116 beads made from the sacred tulasi or neem tree . . . ."  ECF No. 66,

Ex. B-4.  "These beads are kept inside a cloth bag which is used with a

cloth strap."  *Id.*  "There is a small string of smaller counter beads attached

to the strap, used to keep track of rounds chanted."  *Id.*  There is no color

requirement or prohibition listed for any of those beads.

Followers of Santeria also use prayer beads, which the Department

requires to be "clear or solid white, black or natural wood color."  ECF No.

66, Ex. C-1.  Roman Catholic adherents may have Rosary beads, which

are "carried in the pock and not worn around the neck."  ECF No. 66, Ex.

C-2.  Rosary beads must be a "[s]olid color - all white, black, clear, or

natural wood color."  *Id.*  Islamic practitioners use Dhikr beads that "are

either 99 or 33 in number," but the Department prefers "a strange of 33"

beads for security reasons.  ECF No. 66, Ex. C-3.  These beads also must

"be all of one color - black, white, clear, or natural (wood or seed) and

should be carried in the pocked, not worn around the neck."  *Id.*

**Analysis**

**a.   Eleventh Amendment Immunity**

Defendant Jones asserts entitlement to immunity under the Eleventh

Amendment.  ECF No. 65 at 7.  Defendant points out that neither Congress

nor the State of Florida have waived sovereign immunity or consented to be sued pursuant to 42 U.S.C. § 1983.  *Id.* (citing Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1502 (11th Cir. 1995), Gamble v. Florida Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1520 (11th Cir. 1986)); see also Carr v. City of Florence, Alabama, 916 F.2d 1521, 1525 (11th Cir. 1990).  Defendant contends that "all official capacity claims for damages against Defendant Jones must be dismissed."  *Id.*  Plaintiff did not address this argument.

"By its terms, the [Eleventh] Amendment provides that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'"  Seminole Tribe of Florida v. Florida Dep't of Revenue, 750 F.3d 1238, 1242 (11th Cir. 2014), cert. denied, 135 S. Ct. 947, 190 L. Ed. 2d 829 (2015).  Eleventh Amendment immunity protects a state official sued in his or her official capacity from suits for monetary damages.  An action against that official for prospective injunctive relief is outside the protection offered by the Eleventh Amendment.  Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Pennhurst State Sch. & Hosp. v.

Halderman, 465 U.S. 89, 96, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  Here,

Plaintiff seeks an award of nominal monetary damages and a declaratory

judgment that will permit him to obtain a beaded headband.  ECF No. 48 at

9; *see also* ECF No. 69 at 2, 5.  Eleventh Amendment immunity precludes

Plaintiff's request for monetary damages against Defendant Jones in her

official capacity and that request for relief should be dismissed.[5]

**b.    Equal Protection Claim**

Defendant Jones's motion argues that the prohibition against beaded

headbands is not discriminatory because the ban "applies to all inmates

and is not based on religion."  ECF No. 65 at 8.  Defendant asserts that

beads used by inmates "must be clear or solid white, black or natural

(wood/seed) color," regardless of the religious preference.  *Id.*  Defendant

contends that Plaintiff cannot "establish that other similarly situated

prisoners are not treated more favorably."  *Id.*  Additionally, Defendant

argues that Plaintiff cannot show there was an intent to discriminate

against Native American practitioners.  *Id.* at 8-9.  Rather, the prohibition is

---

[5] Plaintiff's amended motion for summary judgment also states that "Defendant Jones is being sued in her individual capacity for adopting this policy . . . ."  ECF No. 66 at 4.  To the degree Plaintiff maintains an individual capacity claim, nominal damages *could* be awarded if Plaintiff were to prevail.

based on "the qualities inherent in Native American beads themselves, not the religion they are being used by."  *Id.* at 9.  Defendant argues that Plaintiff is permitted to practice his religion, may wear non-beaded headbands, and argues that because security concerns justify the prohibition on beaded headbands, summary judgment should be granted in favor of the Defendant Jones.  *Id.* at 9-11.

For his part, Plaintiff seeks to have summary judgment entered in his favor.  ECF No. 66.  Plaintiff contends that Defendant's position is "an exaggerated response to security."  *Id.* at 1-5.  Plaintiff argues that there is no evidence that Native American prisoners are a security risk, gang members, and contends that "[i]f one religion can possess beads then all religions should be able to."  ECF No. 69 at 2.  He asserts that the challenged policy does not apply equally "because those who choose to follow the Native American religion are denied beads entirely."  ECF No. 68 at 1.

"[A] prison inmate retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (quoted in Johnson v. California, 543

U.S. 499, 510, 125 S. Ct. 1141, 1149, 160 L. Ed. 2d 949 (2005)).  "This is

because certain privileges and rights must necessarily be limited in the

prison context."  Johnson, 543 U.S. at 510, 125 S. Ct. at 1149 (citing

O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96

L.Ed.2d 282 (1987); Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049,

92 L.Ed. 1356 (1948) ("'[L]awful incarceration brings about the necessary

withdrawal or limitation of many privileges and rights, a retraction justified

by the considerations underlying our penal system'")).

     "To establish an equal protection claim, a prisoner must establish that

(1) he is similarly situated with other prisoners who received more

favorable treatment; and (2) his discriminatory treatment was based on

some constitutionally protected interest" such as race, religion, national

origin, or gender.  Jones v. Ray, 279 F.3d 944, 946–947 (11th Cir. 2001)

(quoted in Brunskill v. Boyd, 141 F. App'x 771, 776 (11th Cir. 2005)); Sweet

v. Sec'y Dep't of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006);

Muhammad v. Sapp, 388 F. App'x 892, 899 (11th Cir. 2010); Moore v.

McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014).

     As to the first prong, Plaintiff has established that other religious

groups are afforded beads, although in the form of prayer beads, not

beaded headbands.  Inmates with religious affiliations of Buddhism, Hinduism, Krishna, and Thelema, are permitted to have beads with no color designation or prohibition.  Catholic, Islamic, and Santeria adherents may have beads, which the Department requires to be clear, solid white, black or natural color.  Accordingly, there is evidence that other similarly situated prisoners of other religious faiths are provided something Native American inmates are not: beads.  Other religious faiths have beads on a string; Plaintiff wants beads on a headband, something he is already permitted to have, minus the beads.  Whether beads are permissible in one's pocket (Rosary beads), hanging from the neck (Santeria Prayer Beads)[6], wrapped around the wrist (Mala prayer beads), or adorning a headband has not been shown to have any significant distinction.  Plaintiff has demonstrated the first prong of an equal protection claim.

The second prong is more problematic.  Plaintiff must show "the state engaged in invidious discrimination against him based on race, religion,

---

[6] An opinion issued by then Judge Sotomayor, Campos v. Coughlin, 854 F.Supp. 194 (S.D.N.Y.1994), recognized the right of New York prisoners to wear Santeria beads around the neck while incarcerated.  A prior case in this District also noted that a Santerian follower could not "possess beads in the various color combinations he desire[d]," but he could possess and wear Orisha beads of four different color sets: solid white, clear, solid black, and wooden.  Avila v. McDonough, No. 3:05cv280-LAC/EMT, 2007 WL 2480246, at *7 (N.D. Fla. Aug. 30, 2007).

national origin, or some other constitutionally protected basis."  Sweet, 467

F.3d at 1318–19 (quoted in Muhammad, 388 F. App'x at 899); *see also*

Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212, n.6 (11th Cir.

2008) (noting that "the equal protection clause prohibits only intentional

discrimination.").

    In Washington v. Davis, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d

597 (1976), the Court rejected the notion that "a law or other official act,

without regard to whether it reflects a racially discriminatory purpose, is

unconstitutional [s]olely because it has a racially disproportionate impact."

Washington, 426 U.S. 229, 239, 96 S. Ct. 2040, 2047, 48 L. Ed. 2d 597

(1976).  In Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512

(1964), the Court rejected claims that voting districts had been racially

gerrymandered, finding the challengers "failed to prove that the New York

Legislature 'was either motivated by racial considerations or in fact drew

the districts on racial lines.'"  Washington, 426 U.S. at 239, 96 S. Ct. at

2047 (quoting Wright, 376 U.S. at 56, 58, 84 S.Ct. at 605).  The controlling

issue was "whether the 'boundaries . . . were purposefully drawn on racial

lines."  426 U.S. at 239, 96 S. Ct. at 2047 (quoting Wright, 376 U.S. at 67,

84 S.Ct. at 611).  Similarly, "school desegregation cases have also

adhered to the basic equal protection principle that the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose."  426 U.S. at 240, 96 S. Ct. at 2047-48.

Here, Defendant Jones argues that to succeed on his equal protection claim, Plaintiff must "establish that the Department's actions were discriminatory based on his religion."  ECF No. 65 at 9.  Defendant Jones contends that "[t]he Department's prohibition on Native American beaded headbands has to do with the qualities inherent in Native American beads themselves, not the religion they are being used by."  *Id.*  Plaintiff has not specifically addressed that argument, nor has Plaintiff come forward with any evidence to demonstrate that the ban on beaded headbands arises from a discriminatory purpose or intent.  Indeed, Defendant Jones argues that the regulation is neutral because it "applies to all inmates and is not based on religion."  ECF No. 65 at 8.  Plaintiff argues that it is not neutral because Native American inmates are "denied beads entirely," but Plaintiff has not provided any evidence showing that any other group of inmates have colorful, beaded items which are denied to Native American inmates.  Plaintiff has not demonstrated an intent to discriminate,

nor has he shown that the purpose of the ban is to deny Native American inmates of a benefit provided to other religious groups.

It is true that "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." Washington, 426 U.S. at 242, 96 S.Ct. at 2048-2049.  Notwithstanding the long line of cases discussed in Washington, it remains that "proof of discriminatory racial purpose" remains an important necessity.  426 U.S. at 242-45, 96 S. Ct. at 2048-50.  The facts of this case do not "warrant the conclusion that it is a purposeful device to discriminate against" Native American inmates because it appears the policy is "neutral on its face and rationally may be said to serve a purpose the Government is constitutionally empowered to pursue."  426 U.S. at 246, 96 S. Ct. at 2051.

Plaintiff has provided identification of the type of beaded headband desired.  ECF No. 69 at 5.  It contains beads commonly referred to as "seed beads," very small beads often used in crafts and loom weaving. There has been no showing that any other religious groups are permitted to have that type of bead.  More importantly, there is no evidence that any other religious group has been permitted to have beaded headbands.  The

prohibition, without more, appears to be neutral on its face.  The impact

may rest heavier on the shoulders of Native American inmates, but the

crucial deficiency in this case is that there is no evidence of a purposeful or

intentional effort to discriminate against Native American inmates.  *See

also* Avila, 2007 WL 2480246, at *10 (finding no evidence of an intent to

discriminate against adherents of the Santeria religion").  Without such a

showing, an equal protection claim cannot survive and it is not necessary

to evaluate whether the ban is an exaggerated response to a legitimate

penological interest - security.  Accordingly, Defendant's motion for

summary judgment should be granted and Plaintiff's amended motion

should be denied.

## Recommendation

It is respectfully **RECOMMENDED** that: Plaintiff's amended motion

for summary judgment, ECF No. 66, be **DENIED**, and Defendants' motion

for summary judgment, ECF No. 65, be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 8, 2016.


 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Specific, written objections to these proposed findings and recommendations must be filed within 14 days after being served with a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of the objections shall be served upon all other parties. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636. A party may respond to another party's objections within 14 days after being served with a copy thereof.**